IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RYAN COLLINS,

    Plaintiff,

v.                                                                        CIV 1:22-0949 WJ/DLM

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

    Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Plaintiff Ryan Collins's Opposed Motion to Reverse or Remand. (Doc. 20.) Having considered the record, submissions of counsel, and relevant law, the Court recommends that the matter be remanded for further proceedings consistent with this Opinion.[1]

### I.    Procedural History

On January 14, 2020, Collins filed an application with the Social Security Administration for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (SSA). (Administrative Record[2] (AR) at 252–53.) Collins alleged a disability onset date of October 3, 2019. (*Id.* at 252.) Disability Determination Services (DDS) determined that Collins was not disabled initially and on reconsideration. (*Id.* at 76–116.) Collins requested a hearing with an Administrative Law Judge (ALJ). (*Id.* at 142–44.)

---

[1] Chief United States District Judge William P. Johnson entered an Order of Reference Relating to Social Security Appeals on April 3, 2023, referring this case to the undersigned Magistrate Judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." (Doc. 14.)

[2] Document 9 contains the sealed Administrative Record. (Docs. 9-2–8.) The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

Both Collins and a vocational expert (VE) testified during the *de novo* hearing on May 6, 2022. (*See id.* at 34–71.) ALJ Thomas J. Sanzi issued an unfavorable decision on June 2, 2022. (*Id.* at 15–28.) Collins submitted a Request for Review of Hearing Decision/Order to the Appeals Council (*id.* at 239–40), which the Council denied on November 1, 2022 (*id.* at 1–6). Consequently, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

**II.     The Sequential Evaluation Process and the ALJ's Findings**

"The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is eligible for disability benefits, the Commissioner follows a sequential evaluation process. 20 C.F.R. § 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) he is not "doing substantial gainful activity"; (2) he has a severe impairment or combination of impairments that has lasted or is expected to last for at least one year; and (3) his impairments meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), he is unable to perform his past relevant work. 20 C.F.R § 416.920(a)(4)(i)–(iv); *see also* 20 C.F.R. § 416.909; *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). RFC is an assessment of how a claimant's impairments affect his capacity to work and of what he "can still do despite his" limitations. SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that the

claimant retains sufficient [RFC] to perform work in the national economy, given his age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also* 20 C.F.R. § 416.920(a)(4)(v).

At Step One of the process, ALJ Sanzi found that Collins "has not engaged in substantial gainful activity since January 14, 2020, the application date." (AR at 17 (citing 20 C.F.R. § 416.971–76).)

At Step Two, the ALJ concluded that Collins "has the following severe impairments: degenerative disc disease; scoliosis; [and] major depressive disorder." (*Id.* at 18 (citing 20 C.F.R. § 416.920(c)).)

At Step Three, the ALJ found that Collins "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." (*Id.* (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926).) At Step Four, the ALJ considered the evidence of record and found that Collins

> has the [RFC] to perform light work as defined in 20 [C.F.R. §] 416.967 (b) except that the most he could stand and/or walk would be 4 hours in an 8-hour workday. [He] can never climb ladders, ropes, or scaffolds. He can occasionally stoop, crouch, kneel, and crawl. [He] can understand and perform simple, routine tasks, and can perform low-stress jobs, which are defined as having only occasional changes in the work setting and only occasional decision-making required. [He] can occasionally interact with the public.

(*Id.* at 20.) ALJ Sanzi noted that Collins "has no past relevant work." (*Id.* at 26 (citing 20 C.F.R. § 416.965).) Based on his review of the record and the testimony of the VE, the ALJ ultimately determined that Collins "has not been under a disability, as defined in the Social Security Act, since January 14, 2020, the date the application was filed." (*Id.* at 28 (citing 20 C.F.R. § 416.920(g)).)

3

### III. Legal Standard

The Court reviews the Commissioner's decision to determine whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). While a deficiency in either area is grounds for remand, *see Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012), the Court may neither reweigh the evidence nor substitute its judgment for the agency's, *see Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

### IV. Discussion

Collins argues that remand is warranted for two reasons: (1) "The ALJ fails to include any limitations interacting with co-workers and supervisors despite being persuaded by [Family Nurse Practitioner (FNP)] Carro's consultative examination report"; and (2) "The ALJ fails to cite evidence to support his inference that [Collins] performs adequate self-care and activities of daily living [(ADLs)]." (Doc. 20 at 17– 18.) For the reasons discussed below, I recommend granting the motion to remand.

#### A. The ALJ failed to incorporate limitations into the RFC regarding Collins's ability to interact with co-workers and supervisors.

Collins first argues that the ALJ erred when he found FNP Carro's opinion "generally persuasive" (*see* AR at 25) but failed to either include or explain the exclusion of Carro's limitation that Collins was "impaired" in his ability to interact with supervisors or co-workers (*see* AR at 458). (*See* Doc. 20 at 17–18.) The Commissioner contends that there was no reversible error. (*See* Doc. 24 at 17–21.) The Court sides with Collins.

FNP Carro conducted a psychological evaluation of Collins on June 19, 2021, pursuant to a referral from New Mexico Disability Determination Services. (*See* AR at 452.) Relevant here,

4

Carro opined that Collins is "impaired" in his ability to "[r]elate to others, including fellow workers and supervisor[s]." (AR at 458.) The ALJ found that Carro's opinion is "generally persuasive[,]" as it "is well-supported by her professional observations [and is] consistent with the medical evidence of record regarding [Collins's] depression." (AR at 25.) The RFC limits Collins to occasional interaction with the public but fails to include a limitation on Collins's ability to interact with co-workers or supervisors. (AR at 20.)

Collins compares the circumstances here to those in *Jaramillo v. Saul*, No. 1:19-CV-0488 KRS, 2020 WL 6781789 (D.N.M. Nov. 18, 2020). (*See* Doc. 20 at 18.) In that case, the court held that an RFC limiting a claimant to "occasional superficial interactions with coworkers[] and limited interactions with supervisors" did not adequately account for "marked limitations" in the claimant's ability to interact with co-workers and supervisors. *See Jaramillo*, 2020 WL 6781789, at *7–8. The Commissioner argues that *Jaramillo* is distinguishable, as Carro did not assign "marked limitations" but rather stated that Collins's ability to relate to others is "impaired." (Doc. 24 at 19; AR at 458.)

The Court agrees that Carro's use of the term "impaired" more likely indicates "moderate limitations." (*See* Doc. 29 at 3.) A review of the degrees of limitation severity supports this conclusion. *Cf. Jaramillo*, 2020 WL 6781789, at *4 (discussing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(F)(2)).

> Appendix 1 of the SSA's regulations provides that mental disorders are evaluated on a five-point rating scale, with "no limitation" at one end and "extreme limitation" at the other. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(F)(2). Just above the level of "no limitation," a "mild" limitation signifies only "slightly limited" functioning on a sustained basis, while a "moderate" limitation exists where a claimant's functioning on a sustained basis is only "fair." *See id.* Beyond that, a "marked" limitation" in an ability exists when a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." *Id.* While not as severe as an "extreme" limitation, which

> indicates that the claimant is wholly unable to perform an ability on a sustained basis, *see id.*, SSA policies state that a marked limitation is serious enough that a claimant who is markedly limited in an ability "cannot usefully perform or sustain the activity" in question. SSA Program Operation Manual System ("POMS") § 24510.063(B)(3).

*Id.*

Here, Carro opined that Collins is "not impaired" in his ability to understand, retain, and follow instructions (AR at 458), which is indicative of "no limitation" on the five-point rating scale. Carro opined that he is "mildly impaired" in his ability to sustain attention to perform simple, repetitive tasks (*id.*), which is similar to the "mild limitation" indicating "slight limits" in functioning. Finally, she opined that Collins is "impaired" in his abilities to relate to others (including co-workers and supervisors) and to tolerate the stress and pressures associated with daily work activity. (*Id.* at 458–59.) The Court agrees with Collins that this is akin to a finding of "moderate limitations."[3] The Court further agrees that the RFC does not explicitly account for moderate limitations in Collins's abilities to interact with co-workers or supervisors. (*See* AR at 20.)

The Commissioner argues, though, that the omission of these limitations in the RFC is harmless error. (*See* Doc. 24 at 20–21.) The Commissioner asserts that of the three jobs the VE testified Collins can perform—marking clerk, mail clerk, and routing clerk—"none . . . require significant social interaction." (*Id.* at 20.) The Commissioner relies on *Lane v. Colvin*, 643 F. App'x 766 (10th Cir. 2016), an unpublished decision. (*See id.* at 21.) In *Lane*, the ALJ gave a state agency non-examining consultant's opinion "substantial weight." 643 F. App'x at 768. The

---

[3] Collins attempts to equate Carro's opinion with a marked limitation, but the Court is unconvinced. Carro noted in her narrative impression that Collins's "'symptoms would *most likely* impair his ability to function in the workplace.'" (AR at 458 (emphasis added).) This statement does not suggest the presence of a *serious* limitation. Moreover, Collins fails to cite a case that equates "impaired" with "marked limitations," and the Court declines to supply such authority on his behalf.

consultant opined limitations in the claimant's ability to interact with supervisors or co-workers. *See id.* The ALJ failed to include such a limitation in the RFC or in his hypothetical questions to the VE. *Id.* The Tenth Circuit found that the ALJ's failure constituted harmless error, "because the capacity required to do the jobs identified by the ALJ [was] not contrary to [the consultant's opined] limitations regarding interaction with supervisors and co-workers . . . ." *Id.* at 769. Specifically, the Tenth Circuit noted that the identified job (bottling attendant) "is defined as one in which taking instruction or helping is 'not significant' and the activity of talking is 'not present.'" *Id.* at 770 (quoting Dictionary of Occupational Titles (DOT) 920.687-042, 1991 WL 687971) (brackets omitted). As such, the Tenth Circuit found that "there is no actual conflict between" the opined limitations and the abilities required in the identified job. *See id.*

Although the three jobs identified here have identical "taking instructions" and "talking" requirements as those in *Lane*,[4] the Court finds *Lane* is distinguishable. The consultant there opined the claimant "could accept supervision and interact with co-workers as long as contact is [neither] frequent nor prolonged." *Id.* (quotation marks and citation omitted). Carro's opinion was much less specific—she said only that Collins's ability in this area is "impaired." (AR at 458.)

Binding precedent makes clear that "[w]henever a claimant's [RFC] is diminished by both exertional and nonexertional impairments, the Secretary must produce expert vocational testimony or other similar evidence to establish the existence of jobs in the national economy." *Hargis v.*

---

[4] "The DOT rates the amount of interaction with people on a scale of 0–8, with 8 representing the lowest possible level of human interaction that exists in the labor force." *See Lane*, 643 F. App'x at 770 n.1 (discussing DOT, App. B, Explanation of Data, People, & Things, 1991 WL 688701). In each of the three jobs the VE identified here, the ranking for "taking instructions" is 8 or "not significant." *See* 209.587-034 Marker, 1991 WL 671802; 209.687-026 Mail Clerk, 1991 WL 671813; 222.687-022 Routing Clerk, 1991 WL 672133. "That ranking describes the need to take instructions as only '[a]ttending to the work assignment instructions or orders of supervisor' with '[n]o immediate response required unless clarification of instructions or orders is needed.'" *See Lane*, 643 F. App'x at 770 n.1 (quoting DOT, App. B, 1991 WL 688701). Further, the activity of "talking" for each position is "not present," indicating that there will be little contact with either supervisors or coworkers. *See* 209.587-034 Marker, 1991 WL 671802; 209.687-026 Mail Clerk, 1991 WL 671813; 222.687-022 Routing Clerk, 1991 WL 672133.

*Sullivan*, 945 F.2d 1482, 1491 (10th Cir. 1991) (citation omitted). ALJ Sanzi failed to include all Carro's opined limitations in Collins's RFC or in the hypotheticals he posed to the VE. (*See* AR at 20, 54–58.) "[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis*, 945 F.2d at 1492 (quotation omitted).

The ALJ found Carro's opinion persuasive but did not include in the RFC, or in the hypotheticals to the VE, the opined limitation in Collins's ability to interact with supervisors and co-workers. Consequently, the ALJ's decision, which relies on the VE's testimony, is not supported by substantial evidence. The Court recommends remanding for further consideration of Carro's opined limitation on Collins's ability to interact with supervisors and co-workers.

      **B.**    **The ALJ adequately evaluated Collins's subjective symptoms.**

Collins also asserts that the ALJ did not cite evidence to support his finding that Collins "has acknowledged the ability to perform self-care and other [ADLs]." (*See* AR at 19; Doc. 20 at 18.) Collins argues that the ALJ used this erroneous finding to reject Collins's subjective complaints of his symptoms. (*See* Doc. 20 at 18–19.) The Commissioner contends that the ALJ adequately considered Collins's subjective complaints and reasonably found that they were "not entirely consistent with the medical evidence and other evidence in the record . . . ." (*See* AR at 21; Doc. 24 at 21–23.)

An ALJ uses the two-part framework to evaluate a claimant's subjective symptoms, as outlined in SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) and 20 C.F.R. § 416.929. The ALJ first determines "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce [the claimant's] symptoms . . . ." SSR 16-3p, 2017 WL 5180304, at *3; *see also* 20 C.F.R. § 416.929(b). After finding such an

8

impairment, the ALJ must then "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the claimant's] ability to perform work-related activities . . . ." SSR 16-3p, 2017 WL 5180304, at *3; *see also* 20 C.F.R. § 416.929(c).

Notably, Collins does not argue that the ALJ failed to follow this two-step process or failed to consider other relevant factors as outlined in the regulation, which include: (1) the claimant's daily activities; (2) "[t]he location, duration, frequency, and intensity of [the claimant's] pain or other symptoms"; (3) "[p]recipitating and aggravating factors"; (4) details about medications the claimant has taken; (5) other treatments used for symptom relief; (6) other measures the claimant employs for symptom relief; and (7) other symptom-related limitations or restrictions. *See* 20 C.F.R. § 416.929(c)(3). The Commissioner argues that the ALJ adequately evaluated Collins's subjective symptoms under this framework. (*See* Doc. 24 at 21–23.) The Court will examine the ALJ's analysis.

ADLs: This is the factor with which Collins asserts error. He states that in finding Collins "can adequately attend self-care and his activities of daily living" (AR at 19), the ALJ relied on two records: a July 14, 2020 telehealth appointment (*id.* (citing AR at 438)) and Carro's report (*id.* (citing AR at 455)). (*See* Doc. 20 at 19.) Collins argues that neither of these records support a finding that he can adequately perform self-care or ADLs. (*Id.*) Considering the full context of the ALJ's statement, the Court does not agree with Collins's interpretation. The ALJ stated:

> As for adapting or managing oneself, [Collins] has experienced no limitation. Although there are a few mentions of a disheveled or unkempt appearance in the record, for the most part, [Collins] has acknowledged the ability to perform self-care and other [ADLs]. Furthermore, [Collins] has not sought emergency room or inpatient treatment for acute exacerbations of anxiety or depression, and most of his treatment for mental health complaints has been sporadic in nature. Consequently, I find that [Collins] has no limitation in adapting or managing himself.

(AR at 19 (citing AR at 438, 455).) The July 14, 2020 record reflects the doctor's opinion that Collins looked "somewhat unkempt" (AR at 438), which the ALJ noted in his assessment. For her part, Carro recorded Collins's report of his present functioning and ADLs, which include:

> Wakes up, lays in bed and hangs out with mom in house during the day.
> Able to Feed self?: yes
> Able to Bath[e] self?: yes
> Able to perform light household cleaning?: yes
> Able to cook?: yes
> Able to run errands?: has someone do this for him
> Able to drive?: no
> Able to pay bills?: yes
> Manage finances?: yes
> If not who helps you?: his mother
> Living with: mother. Mother is helping him financially.
> Interests and habits.: reading.
> Comment on quality: lacks motivation to perform tasks so that makes it difficult.
> Tell us how he/she relates to family, friends, neighbors, co-works and employers.: impaired
> How did he/she relate to the examiner and other office staff?[]: slightly impaired

(AR at 455.) This list of ADLs largely supports the ALJ's finding.

Collins asserts "[t]he record states that [he] lacks motivation to bathe and attend to daily activities." (Doc. 24 at 19 (citing AR at 452–59).) The Court is unable to find support in the cited pages for this statement.

Collins also argues Carro's report states he "appear[ed] disheveled; his mental activity [was] slow and circumstantial; his mood [was] very anxious, nervous, and dysthymic; his speech [was] slowed; he hears voices once per month; and he engages in self-harm picking that makes his fingers bleed." (*Id.* (citing AR at 452–59).) It is clear, however, that the ALJ considered Carro's entire opinion, and he specifically commented on some of the points Collins raises now. For example, the ALJ noted: (1) Carro's finding that Collins is "slightly impaired [in] relating"; (2) Collins told "Carro that he could perform normal [ADLs] as long as he did not have to leave

the house"; (3) Collins "scored 30/30 on mini mental status examination"; (4) Carro observed a "slow rate of mentation, which suggests some limitation in persistence and/or pace"; (5) Carro observed "circumstantial and slowed mental activity"; (6) Collins exhibited an "anxious an dysthymic mood and affect." (AR at 19, 23 (citing AR at 452–59).) The Court is confident that the ALJ adequately considered Carro's report.

The ALJ's discussion of other records also demonstrates that he sufficiently considered Collins's ADLs. The ALJ discussed Collins's June 2020 psychological consultative examination with John Draper, Ph.D. (AR at 22 (citing AR at 425).) "With regard to his [ADLs, Collins] said that he sometimes cooked, but he denied doing household chores or shopping" and "said that he could not manage money, and his ability to perform [ADLs] was delayed due to problems with concentration." (*Id.* (citing AR at 427).) The ALJ noted that in July 2020, Collins reported to Thomas Gross, M.D. "that his depression had been worse over the past six months" and "that he had not showered in three weeks and was finding it difficult to go out." (AR at 22 (citing AR at 435).) The ALJ's discussion of Collins's ADLs makes it clear that he considered the issues with which Collins is concerned.

Medications and Other Treatments: The ALJ observed that Collins has "been taking medication since 2018 and seeing a therapist since June 2021, but he still experienced panic attacks and fear of leaving the house." (AR at 21.) The ALJ noted that "[i]n July 2019, [Collins] complained of worsening depression over the last year, but he had normal mood, affect, and behavior." (AR at 22 (citing AR at 419, 422).) His provider increased his medication (Pristiq). (*Id.* (citing AR at 438).) Collins reported that he was happy with his medication in August 2019, and he told his psychiatrist that he was doing well on the medication without any side effects in October 2019. (*Id.* at 22 (citing AR 398, 414).) In January 2022, Collins reported to Andrew Clarkinson,

11

D.O. "that Pristiq was working well for depression . . . ." (*Id.* at 23 (citing AR at 479).)

Finally, the ALJ noted that Collins "established care with counselor Dena Silcox" in May 2021, "with complaints of depression and anger issues." (AR at 23 (citing AR at 469).)

After reviewing the ALJ's decision, the Court finds that the ALJ adequately considered Collins's subjective symptoms, including his ADLs, and committed no legal error in his analysis under SSR 16-3p and 20 C.F.R. § 416.929. The Court agrees with the Commissioner that the ALJ reasonably concluded "that the objective medical evidence did not support [Collins's] subjective complaints." (Doc. 24 at 23 (citing AR at 21–23).) Collins essentially asks the Court to reweigh the evidence, a task that is not within this Court's purview. The Court recommends denying the motion on this issue.

### V.     Conclusion

The Court concludes that the ALJ erred in failing to include Carro's opined limitation regarding interactions with co-workers and supervisors. As a result, the Court recommends finding that substantial evidence does not support the ALJ's decision and this case be remanded for further consideration of Carro's opinion.

The Court further finds that Collins fails to establish reversible error regarding the ALJ's analysis of Collins's subjective symptoms. Accordingly, the Court recommends denying Collins's motion on this issue.

**IT IS HEREBY RECOMMENDED** that Collins's Motion to Reverse and Remand (Doc. 20) be **GRANTED in part** as outlined in this PFRD.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with**

**the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE